**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| **WILLIAM GEORGE PINTAS,** | |
| *Plaintiff,* | |
| v. | Civil No. 25-01445 (MAJ) |
| **SETH BRUCE,** | |
| *Defendant.* | |

**OPINION AND ORDER**

### I.    Introduction

This is a defamation case brought by William George Pintas ("Plaintiff") against Seth Bruce ("Defendant"). Plaintiff charges Defendant with defamation for allegedly making false statements regarding Plaintiff in relation to Plaintiff's involvement with a homeowners association in Chicago, Illinois. (**ECF 6 at 1**). Before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. (**ECF 12 at 1–2**). For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED** and this case is **TRANSFERRED** to the United States District Court for the Northern District of Illinois.

### II.    Background

According to the allegations in the Amended Complaint, Plaintiff is an attorney and real-estate investor domiciled in Dorado, Puerto Rico. (**ECF 6 at 1–2 ¶¶ 2, 4**). Defendant is domiciled in Chicago, Illinois. (**ECF 6 at 2 ¶ 5**). Plaintiff alleges that Defendant made false and defamatory statements about Plaintiff regarding his status and

conduct as an officer of a homeowners association ("HOA") managing a condominium in Chicago, Illinois. (**ECF 6 at 3 ¶ 10**).

According to the Amended Complaint, on July 15, 2025, Plaintiff received a demand letter from an agent of Defendant. (**ECF 6 at 3 ¶ 11**). The demand letter accused Plaintiff of making several false statements, "including (i) a "false HOA President claim," (ii) a "false reserve statement," [and] (iii) a "false 'no special assessments' claim[.]" (**ECF 6 at 3 ¶ 11**). The demand letter also raised concerns regarding a series of "alarming transactions evidencing potential embezzlement and misappropriation." (**ECF 6 at 3 ¶ 11**). The Amended Complaint provides no further detail as to the contents of the demand letter.

That same day, according to the Amended Complaint, Plaintiff's counsel responded in writing to the demand letter with detailed factual refutations to the allegations in the letter. (**ECF 6 at 3 ¶ 12**). However, Plaintiff contends that Defendant knowingly continued to publish the allegedly false statements contained in the demand letter to third parties. Specifically, Plaintiff asserts that Defendant spread these allegations to other residents of the condominium and to "related circles." (**ECF 6 at 4 ¶ 14**). Additionally, Plaintiff contends that the original demand letter from July 15, 2025 was sent to a representative of Berkshire Hathaway HomeServices Chicago. (**ECF 6 at 4 ¶ 18**). Plaintiff claims that he has suffered reputational harms and economic losses as a result of these allegedly defamatory acts. (**ECF 6 at 4 ¶ 17**).

Plaintiff does not claim that the alleged defamatory statements were ever published to any person or entity residing or doing business in Puerto Rico. Plaintiff also does not allege that Defendant's conduct physically occurred in Puerto Rico. Nor does Plaintiff claim that the subject matter of any alleged defamatory statement concerned

matters related to Puerto Rico in any way. Instead, Plaintiff merely alleges that "*Plaintiff knew that harm resulting form (sic) the defamation would be felt in Puerto Rico and that Puerto Rico was the place of injury.*" (**ECF 6 at 4 ¶ 15**) (emphasis added). To substantiate this claim, Plaintiff alleges broadly that, "on information and belief, Defendant repeated and promoted [the defamatory statements] to third parties with ties to Puerto Rico, with knowledge and intent that they would be shared among Plaintiff's colleagues and professional contacts in Puerto Rico." (**ECF 6 at 2 ¶ 3**). The Amended Complaint does not identify such third parties, the nature of their purported "ties" to Puerto Rico, or the basis of the claim that Defendant knew such information would be disseminated in Puerto Rico. The Amended Complaint goes on to allege that the purported acts of defamation have "chilled interest in Plaintiff's real-estate assets," and resulted in "lost or impaired business opportunities, and other pecuniary and non-pecuniary damages, with injury felt in Puerto Rico." (**ECF 6 at 4 ¶ 17**). There are no further allegations in the Complaint which specifically relate to Puerto Rico.

### III.   Applicable Law and Analysis

Defendant contends that the Court lacks personal jurisdiction over Defendant and that venue is improper. (**ECF 12 at 1–2**).[1] Accordingly, Defendant moves to dismiss this case in its entirety or, in the alternative, requests a transfer to the Northern District of Illinois. *Id.* at 15. In response to this Motion, Plaintiff argues that the effects of the alleged defamatory statements in Puerto Rico allow this Court to exercise specific personal

---

[1] Defendant also contends that Plaintiff has failed to state a claim upon which relief may be granted. (**ECF 12 at 2**). However, absent personal jurisdiction over Defendant, the Court will not address this argument. *See Sinochem Int'l Co. Ltd. V. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (explaining that a federal court has discretion to decide on which threshold grounds to deny audience to a case on the merits, and that "[w]ithout jurisdiction the court cannot proceed at all in any cause[.]") (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998)).

Civ. No. 25-01445 (MAJ)                                                      Page 4

jurisdiction over Defendant, thereby making this a proper venue. (**ECF 30 at 2, 7**). In addition, Plaintiff requests leave of Court to conduct limited jurisdictional discovery in order to establish that the exercise of personal jurisdiction over Defendant is permissible. (**ECF 30 at 4**). Finally, in the alternative, instead of dismissal for lack of jurisdiction and improper venue, Plaintiff requests a transfer to an appropriate forum. (**ECF 30 at 10**). The Court will address each issue in turn.

### A. Personal Jurisdiction

"Personal jurisdiction implicates the power of a court over a defendant." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 143 (1st Cir. 1995). Without this power, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quotations omitted).  As such, "for the Court to adjudicate the case at hand, personal jurisdiction over [Defendant] must first be established." *Dessus-Medina v. Hotel Wyndham San José Herradura – Costa Rica*, No. 19-cv-1492 (ADC), 2021 WL 4509088, at *2 (D.P.R. Sept. 30, 2021).

Personal jurisdiction may be exercised "by virtue of either general or specific jurisdiction." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Electrical Workers et al. v. 163 Pleasant St. Corp. et al.*, 960 F.2d 1080, 1088 (1st Cir. 1992). Specific jurisdiction, on the other hand, depends on the relationship between the forum and the underlying controversy. *Goodyear Dunlop Ties Operations, S.A. v. Brown,*

564 U.S. 915, 919 (2011). In this case, Plaintiff makes no argument for general jurisdiction but rather asserts a theory of specific jurisdiction. (**ECF 30 at 2**).

A court may assert specific jurisdiction over a non-resident defendant only when they are shown to have certain minimum contacts with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotations omitted). To subject a non-resident defendant to its jurisdiction in a diversity case, courts have a two-part test to determine if these minimum contacts, "in the aggregate, satisfy the requirements of both the forum state's long-arm statute and the [Due Process Clause of the] Fourteenth Amendment." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994) (citations omitted).[2] Given that Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause, this two-step analysis "merge[s] into one[.]" *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011).

In determining the existence of sufficient minimum contacts to assert specific personal jurisdiction over a non-resident defendant, the constitutional analysis requires courts to apply a three-prong test, which looks at: (1) relatedness; (2) purposeful availment; and (3) reasonableness. *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022) (citations omitted). "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018). Moreover, when personal jurisdiction is contested, it is the plaintiff who bears the burden of showing that all three

---

[2]        "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction,. . . 'is the functional equivalent of a state court sitting in the forum state.'" *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022) (citations and quotations omitted). A federal court's exercise of personal jurisdiction therefore must not exceed the limits of the forum's long-arm statute. *Id.*

Civ. No. 25-01445 (MAJ)                                                          Page 6

prongs are satisfied. *See Hynes v. Forde & O'Meara LLP*, No. 23-cv-1140 (MDM), 2024 WL 3360377, at *1 (D.P.R. Mar. 15, 2024) (citations omitted) (Report and Recommendation adopted by No. 23-cv-1140 (SCC), 2024 WL 3360378 (D.P.R. Mar. 26, 2024)). While Plaintiff does not even attempt to go through these three prongs, the Court will address each in turn.

### i.    Relatedness

The relatedness prong requires a plaintiff's cause of action to "arise out of or relate to" the defendant's contacts with the forum. *See Rodríguez-Rivera,* 43 F.4th at 160 (citations omitted).  Plaintiff must show "a nexus between [his] claims and [Defendant's] forum-based activities." *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016) (citing *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011)). The relatedness test is a relatively relaxed standard. *See Rodríguez-Rivera,* 43 F.4th at 162. Nevertheless, there must be a sufficient relationship between the defendant's conduct and the forum itself. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).

The record does not indicate that this case "arises out of" or is "related to" Defendant's contacts with Puerto Rico. The fatal issue for Plaintiff is that no forum contacts are alleged to begin with. The Complaint only alleges that Defendant repeated defamatory statements to unidentified third parties with unidentified ties to Puerto Rico, as well as the unsupported claim that Defendant intended these statements to be disseminated in Puerto Rico. (**ECF 6 at 2 ¶ 3**). It goes on to provide conclusory allegations regarding reputational harm that occurred in Puerto Rico and Defendant's purported knowledge that this injury would occur in Puerto Rico. (**ECF 6 at 4 ¶ 15**). The Complaint does not, however, allege any facts that would tie Defendant to Puerto Rico. It does not allege any physical presence of Defendant in Puerto Rico, any direct

dissemination of the alleged statements in Puerto Rico, any specificity as to the indirect effects suffered by Plaintiff in Puerto Rico, nor any alleged statements whose subject-matter concerned matters related to Puerto Rico. Ultimately, based on the Complaint, the only connection between Defendant and Puerto Rico is Plaintiff. *Contra Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Plaintiff argues that "jurisdiction can properly be asserted when a person knew an act or statement would have a devastating effect in the forum state." (**ECF 30 at 3**) (citing *Noonan v. Winston*, 135 F.3d 85, 91 (1st Cir. 1998)). Plaintiff reads the First Circuit's case law out of context. Mere knowledge of a plaintiff's "strong forum connections" or domicile in a particular state, combined with the foreseeability of harm, does not alone satisfy the minimum contacts inquiry. *Walden,* 571 U.S. at 289; *see also U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001). Such an approach would shift the analytical focus from Defendant's contacts with the forum to Defendant's contacts with Plaintiff, "impermissibly allow[ing] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden,* 571 U.S. at 289. At bottom, no minimum contacts can be discerned from the record. "[S]ince there can be no requisite nexus between the contacts and the cause of action if no contacts exist[,]" Plaintiff necessarily fails to satisfy the relatedness prong. *Swiss Am. Bank*, 274 F.3d at 621. While this failure alone dooms any finding of specific personal jurisdiction, the Court discusses why Plaintiff also fails to meet the remaining two prongs.

### ii.    Purposeful Availment

Assuming, arguendo, that specific facts had been alleged to show related contacts between Defendant and Puerto Rico, Plaintiff must still show that Defendant "purposefully availed [him]self of the privilege of conducting activities within Puerto

Rico, thus invoking the benefits and protections of Puerto Rico's laws." *Rodríguez-Rivera*, 43 F.4th at 163 (citing *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 82 (1st Cir. 2013)). The purposeful availment prong requires a finding of intentional conduct, where "defendants must have acted toward the forum state with sufficient intent to make them 'reasonably anticipate being haled into court there.'" *Noonan*, 135 F.3d at 90 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In general, "contacts must show that the defendant deliberately reached out beyond [his] home." *Rodríguez-Rivera*, 43 F.4th at 163 (citations and quotations omitted). While the cornerstones of this intentionality are voluntariness and foreseeability, both elements assume contacts with the forum-state exist to begin with. *Id.*

Despite the lack of contacts made by Defendant with Puerto Rico, Plaintiff attempts to establish "purposeful availment" under the "effects doctrine" articulated in *Calder v. Jones.* (**ECF 30 at 2**); *see* 465 U.S. 783, 789 (1984). In that case, the Supreme Court found that a court in California could assert specific jurisdiction over two Florida reporters who wrote a libelous article about California entertainer Shirley Jones for the *National Enquirer*. *Calder*, 465 U.S. at 783. While the Supreme Court adopted this effects test "for determining purposeful availment in the context of defamation cases[,]" Plaintiff's reliance on *Calder* is misplaced. *Noonan,* 135 F.3d at 90 (1st Cir. 1998). In *Calder*, the Court found that the intentional conduct in question was "*calculated* to cause injury to [the plaintiff] *in California,*" as the defendant's intentional and tortious actions were "expressly aimed" at the forum state. *Calder*, 465 U.S. at 789, 791 (emphasis added). As the Supreme Court summarized in *Walden,* the defendants in *Calder* made "ample" contacts with California: defendants had relied on California sources for the information in their allegedly libelous story; the story itself referred to the plaintiff's California

activities; and the story was widely circulated in California, the state where the publication had its largest circulation. *Walden,* 571 U.S. at 287 (citations omitted). In the present case, no factual allegations indicate that any defamatory statements were focused on, aimed at or even related to Puerto Rico. In other words, here there are no contacts to speak of, let alone "ample" contacts like those in *Calder.*

Based on the Amended Complaint, the allegedly defamatory statements concerned Plaintiff's business activities in Illinois; were centered around real property located in Illinois; and were communicated in Illinois to Illinois residents. (**ECF 6 at 3–4**). Arguing Defendant's statements would "predictably reverberate through Plaintiff's Puerto Rico-based business and professional network" is too conclusory for a finding of purposeful availment. (**ECF 39 at 11**). According to the allegations in the Complaint, therefore, the Court cannot conclude that the Defendant expressly aimed the allegedly defamatory statements at Puerto Rico.

### iii.    Reasonableness

"The jurisdictional inquiry is not a mechanical exercise." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994). "[E]ven where purposefully generated contacts exist, courts must consider a panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal." *Ticketmaster*, 26 F.3d at 209 (quoting *Pleasant St.*, 960 F.2d at 1088). Five of these factors, labelled the "Gestalt Factors", control the analysis: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *See Ticketmaster*, 26 F.3d at 209 (citing *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In general, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster*, 26 F.3d at 210. The Court will address each factor in turn.

When assessing the burden of appearance on Defendant—a resident of Illinois—in Puerto Rico, the Court recognizes that "traveling to Puerto Rico isn't overly burdensome in the modern era." *Rodríguez-Rivera*, 43 F.4th at 166 (citing *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994)). However, it is also true that courts in the past have dismissed on grounds of unreasonableness where "defendant's center of gravity. . . was located at an appreciable distance from the forum." *Ticketmaster*, 26 F.3d at 210–211 (collecting cases) (weighing the factor of inconvenience to the defendant as a means to guard against harassment). In this case, Plaintiff asserts jurisdiction in Puerto Rico, as it is his place of domicile and alleged injury, whereas Defendant highlights his complete lack of contacts with the forum. Given that Defendant is an Illinois resident, coupled with a dearth of support for any connection that may exist between him and Puerto Rico, this factor to weighs in favor of Defendant.

Next, the Court considers Puerto Rico's interest in adjudicating this dispute. While "[a] forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders[,]" this interest is lessened by doubts regarding whether the defendant's acts were actually committed within the forum. *Id.* at 211. Because the Complaint alleges that Defendant's acts squarely took place in Illinois regarding an Illinois dispute, Puerto Rico's interest in regulating the subject matter of this dispute is relatively mild.

The third factor–regarding Plaintiff's interest in obtaining effective and convenient relief–also favors Defendant. On the one hand, a plaintiff's choice of forum must be afforded deference in terms of convenience. *See Id.* However, the Complaint otherwise indicates that Puerto Rico would be an inefficient and inconvenient forum for this matter. Based on the specifically alleged facts on the record, the majority of potential witnesses who could be called to testify are likely residents of Illinois. The subject matter of the alleged defamatory statements also exclusively concerns Illinois-related conduct and property. This creates a reasonable expectation that any potential counterclaims would arise under Illinois law. For these reasons, the judicial system's interest in an effective resolution of this controversy weighs against litigating Plaintiff's claims in Puerto Rico.

Finally, the Court finds no strong policy arguments toward either side. While Puerto Rico may have an interest in "protecting its citizens from out-of-state [agents] that cause harm," Plaintiff's weak showing of any contacts between Defendant and this forum render this consideration a makeweight at best. *See Rodríguez-Rivera*, 43 F.4th at 167. Taken altogether, the Court concludes that Plaintiff has failed to meet his burden to establish that the exercise of jurisdiction over Defendant would be reasonable.

Given that all three prongs of the test for specific jurisdiction weigh in favor of dismissal, Plaintiff has failed to meet his burden to establish jurisdiction.

**B. Jurisdictional Discovery**

In the alternative to a finding of specific jurisdiction over Defendant, Plaintiff argues that he should have an opportunity to conduct jurisdictional discovery. (**EC 30 at 4**). As this Court has previously recognized, "[t]he inquiry into minimum contacts is [...] highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." *Mgmt. Group Investors, LLC v.*

*Aeropuertos Dominicanos Sigo XXI, S.A.*, No. 24-cv-1285 (MAJ), 2024 WL 4953979, at *5 (D.P.R. Dec. 3, 2024) (quoting *Pritzker*, 42 F.3d at 60 (internal quotations omitted)). However, while this inquiry may warrant an examination of the record beyond the pleadings, district courts have "broad discretion in determining whether to grant jurisdictional discovery." *Swiss Am. Bank,* 274 F.3d at 626.

In lieu of allowing jurisdictional discovery, a district court may resolve a motion to dismiss for lack of personal jurisdiction under the "prima facie" standard. *Swiss Am. Bank*, 274 F.3d at 618 (citations and quotations omitted). Under this approach, the Court looks to whether the plaintiff has proffered evidence as to the existence of every specific fact required to satisfy the jurisdictional analysis. *Id.* Accepting these properly supported proffers of evidence as true, the Court "construe[s] these proffers in a light most favorable to plaintiff's jurisdictional claim." *Mgmt. Group Investors,* 2024 WL 4953979 at *5 (*quoting *Bluetarp Fin.*, 709 F.3d at 79).

According to Plaintiff, Defendant "made, published, and disseminated defamatory statements that produced reputational harm in Puerto Rico." **(ECF 30 at 4)**. Plaintiff argues that this "factual dispute" justifies jurisdictional discovery. *Id.* However, Plaintiff is not able to provide any specific facts, or proffer evidence, regarding any contacts Defendant may have developed with Puerto Rico. While Plaintiff alleges that unnamed third-parties heard the allegedly defamatory statements in Illinois, he provides no factual basis to explain how these statements could have reached Puerto Rico. Based on what *is* alleged, there is no jurisdictional discovery which would aid Plaintiff to establish personal jurisdiction over Defendant. Accordingly, Plaintiff fails to make a "prima facie" case for personal jurisdiction over Defendant. It may be true that the threshold for granting

jurisdictional discovery is low. *See Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022). It is also true that Plaintiff does not meet that threshold today.

### C. Transfer of Venue

The absence of personal jurisdiction triggers a rebuttable presumption in favor of transferring the case to a proper venue under 28 U.S.C. § 1631. *Federal Home Loan Bank of Boston v. Moody's Corp.*, 821 F.3d 102, 119 (1st Cir. 2016) (citing *Britell v. United States*, 318 F.3d 70, 73 (1st Cir. 2003)).[3] "Only if an inquiring court determines that a transfer is not in the interest of justice is the presumption rebutted." *Id.* (citing *Britell*, 318 F.3d at 74) (internal alterations omitted). In determining whether a transfer would be in the interest of justice or not, courts consider the totality of the circumstances and may examine factors such as whether transferring the case would (1) unfairly benefit the proponent, (2) impose an unwarranted hardship on the objector or (3) unduly burden the judicial system. *Morales v. BAH Logistics LLC*, 25-cv-1106 (FAB), 2026 WL 765609, at *6 (D.P.R. Mar. 18, 2026) (citing *Britell v. United States*, 318 F.3d 70, 74 (1st Cir. 2003)). Neither party objects to the transfer of this case to the Northern District of Illinois.[4]

Defendant does not provide support to rebut the existing § 1631 presumption in favor of transfer instead of dismissal. In evaluating whether transfer is in the interest of justice, there is no unfair benefit to Defendant or unwarranted hardship on Plaintiff. Based on the pleadings, the Northern District of Illinois would have personal jurisdiction over Defendant, as he is an Illinois resident. (**ECF 27 at 2 ¶ 5**). Similarly, Plaintiff has clear forum contacts in Illinois, including "[holding] controlling votes for years" in the

---

[3]     This statute "permit[s] transfer when there's a lack of either personal or subject matter jurisdiction." *Id.*

[4]     While Defendant requests transfer to the Northern District of Illinois if dismissal is unwarranted, Plaintiff also requests transfer to an "appropriate forum rather than dismissal" if this district is determined to be an improper venue. (**ECF 30 at 10**).

condominium association at the heart of this dispute, corresponding to real property located in in Chicago, Illinois. (**ECF 6 at 3 ¶ 12(b)**). This longstanding contact is directly related to the alleged statements giving rise to the defamation cause of action. In short, venue would be proper in the Northern District of Illinois because Defendant resides in that district and is subject to that court's personal jurisdiction, and a substantial part, if not all, of the events giving rise to this claim occurred in that district. *See* 28 U.S.C. § 1391(b). Finally, transfer to the Northern District of Illinois would not unduly burden the judicial system, nor does the Court believe this case to be "frivolous or brought in bad faith" at this time. *See Morales*, 2026 WL 765609, at *6 (citations omitted). On the contrary, as discussed in the preceding reasonableness analysis, a large part of the evidence and potential witnesses in this case are in Illinois, making Illinois a more convenient forum for this litigation. Accordingly, the Court adopts the parties' requested transfer.

## IV.   Conclusion

Crediting the specific factual allegations in the Complaint and viewing those allegations in a light most favorable to the Plaintiff, the Court finds that it lacks personal jurisdiction over the Defendant. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is therefore **DENIED**, Plaintiff's request for leave to conduct jurisdictional discovery is **DENIED**, and this case is **TRANSFERRED** to the United States District Court for the Northern District of Illinois.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of April, 2026.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**